**Samir DALAL, Plaintiff,**

v.

**ALLIANT TECHSYSTEMS, INC. d/b/a Metrum Information Storage and Honeywell Inc., Defendants.**

No. 92–K–1065.

United States District Court, D. Colorado.

May 23, 1996.

Otto K. Hilbert, Colorado Springs, CO, for plaintiff.

David Seserman, Arun Das, Gorsuch, Kirgis, L.L.C., Denver, CO, for defendants.

## MEMORANDUM OPINION AND ORDER ON REMAND

KANE, Senior District Judge.

Alliant Techsystems, Inc. appealed the order of Judge Carrigan granting post-judgment relief to Plaintiff, Samir Dalal, and denying Alliant's motion for attorney fees and costs to the Tenth Circuit Court of Appeals. The appeals court affirmed in part, vacated in part, and remanded the case for further proceedings. *Dalal v. Alliant Techsystems, Inc.*, 72 F.3d 137 (10th Cir.1995) (table), 1995 WL 747442 at *7 (10th Cir. Dec. 18, 1995) (text).

Judge Carrigan has resigned since judgment was entered. Mindful of this fact, the Tenth Circuit stated: "With respect to reconsideration which is required by this order and judgment, the judge assigned this case may on remand consider the present record or may have further proceedings that the judge feels advisable." *Dalal*, 1995 WL 747442 at *3 n. 3.

The case was reassigned to me on remand. Oral argument on the issues remanded was held on April 30, 1996. This opinion follows.

### I.  *Background.*

Dalal is a former employee of Honeywell, Inc. which was succeeded by Alliant Techsystems, Inc. Following his 1990 discharge, Dalal filed a complaint on May 28, 1992 against Alliant and Honeywell,[1] alleging race and national origin discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.;* breach of the duty of good faith and fair dealing and public policy; violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623 *et seq.;* breach of employment contract; and promissory estoppel.

On May 13, 1993, Alliant made a comprehensive offer of judgment pursuant to Fed. R.Civ.P. 68 in the amount of $150,000.00 which was rejected by Dalal.

On June 7, 1993, Judge Carrigan entered summary judgment in favor of Alliant on the Title VII claim and on the claim for breach of the duty of good faith and fair dealing and public policy under Colorado law. Dalal's state law claims for breach of employment contract and promissory estoppel were dismissed without prejudice for lack of jurisdiction. At that time, the court denied Alliant's request for attorney fees incurred in defending the dismissed claims.[2]

---

1. For the sake of clarity, I refer to Dalal's employer and Defendants as "Alliant" throughout.

2. Dalal filed an amended complaint on November 5, 1992 purporting to state a further claim under the Employee Retirement Income Security Act of 1974, as amended (ERISA). In his ruling on summary judgment, Judge Carrigan noted Defendants had moved for summary judgment on Dalal's ERISA claim. Judge Carrigan found the complaint did not state a claim under ERISA and denied the motion for summary judgment on this ground as moot.

Dalal succeeded at trial on his ADEA claim. During trial, Dalal argued he had lost $159,300.00 due to his inability to find comparable work after his discharge. The jury, however, returned a judgment in the amount of $36,075.00 for back pay damages. The trial court awarded costs to Dalal.

Both parties filed post-trial motions. Dalal requested various forms of postjudgment relief including front pay or reinstatement, attorney fees and prejudgment interest. Alliant renewed its request for attorney fees incurred in defending the claims that were dismissed and also requested costs. After a hearing, Judge Carrigan entered judgment on September 14, 1994 in favor of Dalal and against Alliant, determining Dalal was entitled to $90,000.00 in front pay, $146,666.00 in attorney fees (including an award of $3,950.00 allowable to expert witness fees incurred during trial), and $6,450.29 in prejudgment interest, and denying Alliant's renewed request for attorney fees and costs pursuant to Fed.R.Civ.P. 68. On January 23, 1995, judgment was entered in favor of Dalal for taxable costs in the amount of $4,800.92. Alliant appealed the judgment in all respects.

The Tenth Circuit vacated the awards of front pay, attorney fees and costs to Dalal; affirmed the award of prejudgment interest on Dalal's backpay award; affirmed the denial of attorney fees to Defendants; and affirmed the judgment in all other respects. The court of appeals remanded the case to this court for further proceedings consistent with its order and judgment. *Dalal,* 1995 WL 747442 at *7.

## II. *Front Pay.*

In his motion for postjudgment relief, Dalal requested that he be reinstated or, in the alternative, that he be awarded front pay. Judge Carrigan made several findings in his judgment awarding front pay, including "[t]hat a strong probability exists in the record that Mr. Dalal would have been laid off for legitimate business reasons at some date during the third year after his September 30, 1990 lay off." (Judgment Sept. 14, 1994 ¶ 2.)

On appeal, Alliant argued the court erred in awarding front pay because front pay is an award of future damages, *see Sandlin v. Corporate Interior Inc.,* 972 F.2d 1212, 1215 (10th Cir.1992), and the court found a "strong probability" that Dalal would have been legitimately laid off before trial. Alliant further asserted the front pay award should be vacated because the jury only awarded Dalal $36,075.00 rather than his requested $159,300.00, and must have determined that Dalal would have been legitimately terminated from his employment some time between his unlawful discharge and trial.

The Tenth Circuit stated it was "unable to determine with certainty the basis of the district court's front pay award." *Dalal,* 1995 WL 747442 at *3. It noted Judge Carrigan had repeatedly indicated he did not want to speculate as to why the jury awarded Dalal less than one-quarter of the amount he requested in back pay. The court observed, however, the method used to calculate the front pay award appeared to account for the probability that Dalal would have been legitimately laid off before trial. Further, the amount was based on what Dalal would have made in the three-year period before trial which the judge estimated he would have worked before being legitimately laid off.

The Tenth Circuit concluded it appeared Judge Carrigan awarded Dalal front pay for the period after his discharge and before trial and, to the extent the judge had intended the award to compensate Dalal for the period before trial, he was in error because front pay is an alternative to reinstatement and an award of future damages. The court vacated the award of front pay and remanded the case to this court for reconsideration of its front pay award "in light of these principles." *Id.* "Any award of front pay by the district court on remand must be based on the amount the district court finds Mr. Dalal would have earned as an employee of Alliant after the trial if he could have been reinstated." *Id.*

Dalal asserts there was age discrimination in the layoffs in 1991 and 1992, after his termination, and that to deny a front pay award on account of the fact that he would have been laid off before trial would be speculative and unfair. Judge Carrigan, however, made the following findings of fact: "[A] strong possibility exists in the record that Mr. Dalal would have been laid off for legitimate business reasons at some date during

the third year after his September 30, 1990 layoff," (Judgment Sept. 14 1996 ¶ 2); "there was a strong possibility that Mr. Dalal would have been laid off for legitimate business reasons sometime before the time of the trial," (Tr. Hearing Pretrial Mots. Sept. 2, 1994 at 20); and "[m]y best estimate is that he would have been laid off sometime in that third year, judging by the circumstances of this company. Therefore I'm going to award him $90,000 in front pay," (*id.* at 21).

Dalal did not appeal these findings of fact, which therefore stand. The Tenth Circuit explicitly directed that on remand, "[a]ny award of front pay ... must be based on the amount the district court finds Mr. Dalal would have earned had he been an employee of Alliant after the trial if he could have been reinstated." *Dalal*, 1995 WL 747442 at *3.

Dalal argues this case is distinguishable from *Sandlin v. Corporate Interior, Inc.*, 972 F.2d 1212, 1214 (10th Cir.1992), relied on by the appeals court, in that there the defendant interior design company went out of business whereas here the Defendant companies continued to be successful in other states but ceased operations in Colorado.

The clear directive of the Tenth Circuit both on appeal in this case and in *Sandlin*, however, is that the purpose of front pay is "to make a plaintiff whole—to put the plaintiff, as nearly as possible, into the position he or she would have been in absent the discriminatory conduct," *Sandlin*, 972 F.2d at 1215, and "any award of front pay is limited by the estimated remaining tenure plaintiff would have enjoyed with his company absent the discriminatory conduct," *id.*

Based on the record, including the clear findings of Judge Carrigan that Dalal would have been discharged for legitimate reasons before trial, any award of front pay is inappropriate. *See id.* None of the cases cited by Dalal, nor any argument offered at the hearing on remand avert this result. Accordingly, I deny any front pay award.

### III. *Dalal's Attorney Fees.*

#### A. *Mandate on Remand.*

The Tenth Circuit considered four general arguments asserted by Alliant in contending that the district court erred by awarding $146,666.00 to Dalal as reasonable attorney fees.

First Alliant argued the district court erred by including $3,950.00 for expert witness fees incurred by Dalal at trial. Dalal conceded and the appeals court agreed that *Gray v. Phillips Petroleum Co.*, 971 F.2d 591, 596–97 (10th Cir.1992), held expert witness fees incurred by a plaintiff in an ADEA case are not recoverable as part of reasonable attorney fees. Accordingly, the Tenth Circuit reversed this portion of this court's order.

Next Alliant argued the amount of attorney fees awarded to Dalal was unreasonable. In this regard, the appeals court stated, based on its review of the record, an affidavit attesting that the customary rate in the Denver community was at least $10.00 an hour more than that charged by Dalal's attorney, and Alliant's admission in oral argument that it had incurred an attorney fee in excess of $200,000 in defending the action, it did not believe this court had abused its discretion in awarding Dalal $146,666.00 as reasonable attorney fees.

Third Alliant argued because it was granted summary judgment on Dalal's Title VII and state law claims, any award of attorney fees should be discounted so that Dalal was not awarded attorney fees for work performed in pursuing these claims. The Tenth Circuit noted Dalal had attached to his motion for attorney fees his attorney's affidavit stating, at most, ten percent of the total hours expended in this case until the time of the dismissal of the Title VII claim, were related to that claim. Dalal reduced the requested amount of attorney fees by the amount representing those hours and this court awarded the reduced figure. The appeals court held the district court could reasonably have relied on this information to support an award of attorney fees to Dalal.

The court noted, however, that Dalal's attorney had apparently not discounted his fees for hours expended pursuing the state law claim. The Tenth Circuit acknowledged it had previously allowed a full fee award under the ADEA even though the award also reflected hours spent pursuing "unsuccessfully asserted state law claims." *See Spulak v. K Mart Corp.*, 894 F.2d 1150, 1160 (10th Cir.1990). Further, in *Spulak*, the court rec-

ognized a fee award " 'should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit' " so long as "the claims were interrelated and the results obtained were excellent." *Id.* (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983)).

The appeals court directed this court to reconsider whether Dalal is entitled to attorney fees incurred in pursuing his state law claim, assessing whether Dalal's claims were based on " 'a common core of facts or on related legal theories' " and whether he obtained " 'excellent results.' " *Dalal,* 1995 WL 747442 at *4.

Finally, Alliant argued Dalal should not have been awarded attorney fees incurred after Alliant made an offer of judgment in compliance with Federal Rule of Civil Procedure 68. Under that rule, if a party rejects an offer of judgment and "the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer." Fed.R.Civ.P. 68.

The Tenth Circuit rejected this argument and found Rule 68 does not bar recovery of attorney fees, as opposed to costs, for services rendered after a Rule 68 offer is made. The court noted *Marek v. Chesny,* 473 U.S. 1, 10, 105 S.Ct. 3012, 3017, 87 L.Ed.2d 1 (1985) specifically limited its holding to cases where the underlying statute defines "costs" to include attorney fees.

█ The ADEA provides for an award of attorney fees by reference to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b). *See* 29 U.S.C. § 626(b). The FLSA does not describe attorney fees as "costs," but states the district court shall "allow a reasonable attorney's [sic] fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Therefore, Rule 68 does not preclude an award of attorney fees in an FLSA case for services rendered after the Rule 68 offer where plaintiff recovers less than the amount of settlement. *Haworth v. Nevada,* 56 F.3d 1048, 1052 (9th Cir.1995). The Tenth Circuit held because ADEA provides for an attorney fee award by reference to the FLSA, the rule also applies in the context of the ADEA and Rule 68 does not bar recov-

ery of attorney fees under these circumstances. *Dalal,* 1995 WL 747442 at *5.

The appeals court vacated the attorney fee award because of this court's error in awarding $3,950.00 for expert witness fees. It also required this court, on remand to determine whether Dalal achieved "excellent results" so as to justify an award of attorney fees incurred in pursuing his state law claim. Finally, because it was remanding the case for reconsideration of the front pay award, the Tenth Circuit ordered this court to reconsider its award of attorney fees "in light of any effect our holding may have on Mr. Dalal's ultimate recovery in this case." *Id.*

In denying an award of front pay, I effectively reduce the damages award from a total of $126,075.00 ($36,075.00 for back pay plus $90,000.00 for front pay) to $36,075.00. As mandated, I consider whether, in these circumstances, Dalal is entitled to recover attorney fees and, if so, what constitutes reasonable attorney fees.

### B. *Parties' Contentions.*

Alliant urges there should be no award of attorney fees because of the minimal results achieved by Dalal in proceeding to trial. It cites that part of the decision in *Haworth v. Nevada,* which held "[w]hen a plaintiff rejects a Rule 68 offer, the reasonableness of an attorney fee award under the FLSA will depend, at least in part, on the district court's consideration of the results that the plaintiff obtained by going to trial compared to the Rule 68 offer." 56 F.3d 1048, 1052 (9th Cir.1995). In *Haworth,* the court noted the plaintiffs had not succeeded on a single theory at trial and, even on the conceded claim, recovered a judgment "close to a quarter of a million dollars less than they could have had by accepting the Rule 68 offer. Clearly, the only one who benefitted by pursuing the litigation after the Rule 68 offer was made was the plaintiffs' attorney." *Id.*

The appeals court in *Haworth* remanded the case because the district court failed, in determining the amount of reasonable attorney fees to be awarded to consider "the amount of the Rule 68 offer, the stage of the litigation at which the offer was made, what services were rendered thereafter, the

amount obtained by judgment, and whether it was reasonable to continue litigating the case after the Rule 68 offer was made." *Id.* at 1052–53.

Alliant also cites *Farrar v. Hobby,* a civil rights case, where the Court held to qualify for attorney fees under 42 U.S.C. § 1988, a plaintiff must be a "prevailing party" in the sense that he or she must be able to show that a "material alteration of the legal relationship between the parties occurs." 506 U.S. 103, 113, 113 S.Ct. 566, 574, 121 L.Ed.2d 494 (1992). No such alteration occurs "until the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant." *Id.* at 113, 113 S.Ct. at 574. Where, as in *Farrar,* the plaintiffs received nominal damages instead of the $17 million in compensatory damages they sought, "the only reasonable fee is usually no fee at all." *Id.* at 115, 113 S.Ct. at 575.

Alliant argues from May 18, 1993 forward there was no change in the legal relationship of the parties because upon tendering of the offer of judgment, Dalal could have filed the offer of judgment, accepted the award and would have been the "prevailing party" at that point. Accordingly, Alliant maintains for efforts after May 18, 1993, Dalal was not the "prevailing party" and no attorney fees should be awarded thereafter.

Alliant asserts, based on Dalal's submittal, his total attorney fees through the filing of the Rule 68 offer of judgment on May 18, 1993 were $69,465.00 (463.1 hours). Assuming $4000.00 for accrued costs, the comprehensive offer made to Dalal in the amount of $150,000.00 was $40,460.00 greater than the award he ultimately received ($150,000.00 less $109,540.00 [$36,075.00 + $69,465.00 + $4000.00] equals $40,460.00). On this calculation, Alliant argues Dalal did not prevail from May 18, 1993 forward. In November 1993, Defendants increased their settlement offer to $200,000.00 but Dalal also rejected this offer. Applying the "degree of success obtained" factor stressed by the Court in *Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983), Alliant urges that Dalal achieved little success if any.

Dalal argues he should be awarded attorney fees because he prevailed in this case in that the jury returned a verdict in his favor on his claim of age discrimination in violation of the ADEA and awarded him $36,075.00 in damages. He cites *Hall v. Western Production Co.,* 988 F.2d 1050, 1055 (10th Cir.1993) which held a plaintiff who receives nominal damages in any amount is a prevailing party because the legal relationship between the parties has changed.

The Tenth Circuit in *Hall* distinguished its facts from those in *Farrar v. Hobby,* 506 U.S. at 115, 113 S.Ct. at 575 where the Court held a plaintiff who is awarded only nominal damages, although the prevailing party, would not be entitled to an award of attorney fees. In *Hall,* the jury had awarded the plaintiff $41,793.00 on his breach of contract claim, but, having been instructed not to award "duplicative" damages, awarded plaintiff zero on the his ADEA claim, although it found he had prevailed on both claims. The appeals court found an award of attorney fees under ADEA was proper. The Tenth Circuit further rejected the argument that, since Hall was awarded zero damages on the ADEA claim, the attorney fees should have been reduced, if not disallowed, and held the district court had not abused its discretion in determining the appropriate fee.

Dalal also refers to *Bruno v. Western Electric Co.,* 618 F.Supp. 398, 401–04 (D.Colo. 1985) where the plaintiff sought to recover attorney fees under § 626(b) of the ADEA, 29 U.S.C. § 216. Citing *Hensley v. Eckerhart,* 461 U.S. at 435–36, 103 S.Ct. at 1940–41, the court assessed whether Bruno had achieved excellent results, meriting a fully compensatory fee encompassing all hours reasonably spent on litigation, or whether he had achieved only limited success, in which case such fee might be excessive. The court rejected Western's argument that the attorney fee award should be reduced because Bruno did not recover all of the damages he sought, noting the mandate in *Ramos v. Lamm,* that "[t]he amount of monetary recovery is not as significant as the policy being vindicated," 713 F.2d 546, 557 (10th Cir.1983), and that in *Hensley,* "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit," 461 U.S. at 435,

103 S.Ct. at 1940. *Bruno,* 618 F.Supp. at 402.

Dalal also cites *Caruso v. Peat, Marwick, Mitchell & Co.,* 779 F.Supp. 332, 335 (S.D.N.Y.1991), holding a low damage award does not justify the use of a negative multiplier to the lodestar figure, and *City of Riverside v. Rivera,* 477 U.S. 561, 581, 106 S.Ct. 2686, 2697–98, 91 L.Ed.2d 466 (1986), holding attorney fees eleven times the damage award were not *per se* unreasonable in a civil rights case.

### C. *Analysis.*

The Tenth Circuit found Rule 68 does not bar the recovery of the attorney fees for services rendered after an offer of judgment is made where a plaintiff recovers less than the amount offered in settlement. *Dalal,* 1995 WL 747442 at *5.

■ I find Dalal was the "prevailing party" in that he succeeded in his ADEA claim, and was awarded damages. The issue is whether in light of Dalal's rejection of the Rule 68 offer of $150,000.00 and his ultimate recovery of only $36,075.00, an award of the total amount of attorney fees requested after reduction for the Title VII time expended may be considered reasonable.

■ The degree of success a plaintiff enjoys is "[a] critical factor in determining the amount of fees to be awarded." *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1940. I agree with Alliant that there should be a reduction in the award of attorney fees because Dalal only achieved limited success in this case.

The Amended Complaint contained several claims for relief, including age discrimination, Title VII discrimination, and supplemental state law breach of contract claims. Although the ADEA and Title VII contain attorney fees shifting provisions, the state law claims do not.

On June 7, 1993, Defendants were granted summary judgment on the Title VII claim and on one of the state law claims. Judge Carrigan dismissed Dalal's state claims for breach of contract and promissory estoppel for lack of jurisdiction.

Dalal reduced his fee by ten percent to account for the unsuccessful Title VII claim. The Tenth Circuit remanded for consideration of whether a further reduction in fees should be made in respect of the dismissed state law claims.

■ "If a plaintiff does not prevail on all claims, the court must determine whether adjustment is necessary." *Ramos v. Lamm,* 713 F.2d at 556. If the unsuccessful claims are unrelated to those on which the plaintiff succeeds, work on those unsuccessful claims cannot be compensated. *Id.*

■ However, "when a plaintiff bases his claims for relief on a common core of facts or on related legal theories and obtains excellent results, he should recover a full compensatory fee." *Spulak v. K Mart Corp.,* 894 F.2d at 1160. "In such cases the court must focus on the significance of the overall relief obtained by the plaintiff." *Ramos,* 713 F.2d at 556. If the plaintiff has not obtained "excellent results" but has achieved only "partial or limited success," the court may reduce the award to account for the limited success. *Id.*

Here, the Tenth Circuit noted it was unclear "how beneficial the results obtained in this case are to Mr. Dalal because the district court will be considering the front pay award on remand." *Dalal,* 1995 WL 747442 at *4. I have now reconsidered the issue of front pay and decline to award any. In the circumstances the total damages award is $36,075.00 for back pay on the ADEA claim, only one of his original claims for relief.

■ Even if one concedes the state claims and the ADEA claim involved a "common core of facts," I find there should be a reduction of fees with regard to the hours expended on the state claw claims because, as more fully discussed below, this can only be said to be a case of "partial or limited success." *See Ramos,* 713 F.2d at 546. Indeed, counsel need to recognize they will not be compensated for filing multiple claims when one or two would amply suffice.

At oral argument on remand, Dalal conceded that a fair reduction would be three percent of the time his counsel spent. I agree that a three percent reduction is appropriate. The total amount of $151,245.00 in Dalal's submittal for attorney fees was based on the following calculation: Otto K.

Hilbert (1,008.30 hours × $150.00 per hour = $151,245.00), reduced by $8,529.00 (ten percent of $85,290.00) representing the time allocable to the Title VII matter. The resulting sum is $142,716.00 which Judge Carrigan awarded. Reducing the total time spent (represented by $151,245.00) by three percent with regard to the unsuccessful state law claims, the amount is reduced by a further $4,537.00 to $138,179.00. Further reducing that amount by the $3,950.00 claimed for expert witness fees disallowed by the court of appeals, leaves the sum of $134,229.00.

Accepting Dalal's total attorney fees through the filing of the comprehensive $150,000.00 Rule 68 offer of judgment to be $69,465.00 (463.1 hours), and assuming $4000.00 for accrued costs, had Dalal accepted the offer, he would have received damages in the amount of $76,535.00 ($150,000.00 less $73,465.00 [$69,465.00 + $4000.00]). This would have been $40,460.00 greater than the $36,075.00 damages award he ultimately received.

In remanding the case, the Tenth Circuit, relied on the ruling in *Haworth v. Nevada,* 56 F.3d 1048, 1052 (9th Cir.1995), that the existence of the Rule 68 offer of judgment does not *per se* preclude the award of a reasonable attorney fee for services incurred for services thereafter. *Dalal,* 1995 WL 747442 at *5. As noted above, the *Haworth* court also held that where a plaintiff recovers less than the amount offered in a Rule 68 offer, "[i]n determining what fee is reasonable in this circumstance, the district court must take into consideration the amount of the Rule 68 offer, the stage of the litigation at which the offer was made, what services were rendered thereafter, the amount obtained by judgment, and whether it was reasonable to continue litigating the case after the Rule 68 offer was made." *Haworth,* 56 F.3d at 1052–53.

■ In light of my decision to deny front pay, leaving an ultimate damages award of only $36,075.00, awarding attorney fees in the lodestar amount of $134,229.00 would be unreasonable, taking into account Dalal's rejection of the $150,000.00 Rule 68 offer of judgment.

■ The relatively low damages award in itself would not necessarily render a full award of attorney fees unreasonable. *See Ramos v. Lamm,* 713 F.2d at 546 (holding "[t]he amount of the monetary recovery is not as significant as the policy being vindicated"); *Bruno v. Western Electric Co.,* 618 F.Supp. 398, 402 (rejecting defendant's argument that the award of attorney fees should be reduced because plaintiff did not recover all of the damages he sought). Nor does the fact that the fees exceed the damages award, of itself render the fees unreasonable. *See City of Riverside v. Rivera,* 477 U.S. 561, 573–78, 106 S.Ct. 2686, 2693–96, 91 L.Ed.2d 466 (1986) (rejecting the proposition that fee awards under 42 U.S.C. § 1988 should necessarily be proportionate to the amount of damages plaintiff recovers).

■ Nevertheless, the Tenth Circuit has held "*Hensley* contemplates adjustments to the lodestar to reflect plaintiffs' overall success." *Jane L. v. Bangerter,* 61 F.3d 1505, 1511 (10th Cir.1995). "[T]he district court must make a qualitative assessment to determine what less-than-perfect results are 'excellent,' justifying full recovery, or to what extent plaintiffs' 'limited success' should effect a reduction in the lodestar." *Id.* (quoting *Hensley,* 461 U.S. at 436, 103 S.Ct. at 1941).

Dalal's rejection of the Rule 68 offer, which exceeded his ultimate recovery on only one of several original claims, warrants an adjustment of the lodestar to reflect his limited success. Exercising my discretion as to what constitutes a reasonable fee, I award the total fees incurred before the Rule 68 offer (taken as $69,465.00) and only half of those fees incurred thereafter (half of $64,764.00 equals approximately $32,382.00) for a total of $101,847.00.

## IV. *Costs.*

Alliant argued on appeal that the district court's award of costs should be remanded for reconsideration by this court and that, if, on remand, this court reduces the amount of front pay, Dalal's total recovery may fall below the $150,000.00 Rule 68 offer of judgment made to him before trial. The Tenth Circuit agreed that, if Dalal's ultimate recovery is less than $150,000.00, Rule 68 would

require him to pay all costs incurred after the offer was made. *Dalal,* 1995 WL 747442 at \*6. Accordingly, the court vacated the judgment awarding costs and remanded the issue for reconsideration. *Id.*

█ As discussed, Alliant made a valid Rule 68 offer of judgment and the final judgment against it will be less than the amount offered. While Alliant must bear the costs of both parties incurred before the Rule 68 offer was made on May 18, 1993, Dalal must bear his own costs of suit as well as those of Alliant, incurred thereafter.

I am not unmindful of the dedicated service of Dalal's counsel. Percolating through the record are numerous indications that Dalal's perseverance in spite of fair, indeed generous, offers of settlement was entirely his own. Even so, fee-shifting statutes are designed to compensate the litigant for sums which he remains liable to those he hires. Such statutes are not intended to provide plaintiffs with a subvention that liberates them from responsibility for their own actions. The term "reasonable attorney fees" in this context is intended to mean only what amount is reasonable to shift to the opposing party. Clearly, the total amount owed by the plaintiff to his attorney is not within the ambit of this determination.

## V. *Conclusion.*

For the aforesaid reasons, I deny any award of front pay, award Dalal attorney fees in the amount of $101,847.00 and his costs incurred before May 18, 1993. I award Alliant its costs incurred after May 18, 1993.

Following the December 18, 1995 remand of this case by the court of appeals to this court for further proceedings consistent with its order and judgment,

IT IS ORDERED THAT Plaintiff's request for front pay damages is DENIED;

IT IS FURTHER ORDERED THAT reasonable attorney fees are awarded in favor of Plaintiff and against Defendants in the amount of $101,847.00;

IT IS FURTHER ORDERED THAT costs incurred before May 18, 1993 are awarded in favor of Plaintiff and against Defendants;

IT IS FURTHER ORDERED THAT costs incurred after May 18, 1993 are awarded in favor of Defendants and against Plaintiff.